

**SO ORDERED.**

**SIGNED this 27 day of December, 2011.**

**James D. Walker, Jr.**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 10-53717-JDW |
| SHARON D. BISHOP, | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| SHARON D. BISHOP, | ) | ADVERSARY PROCEEDING |
| | ) | NO. 11-5055 |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| GMAC MORTGAGE, LLC, f/d/b/a | ) | |
| GMAC MORTGAGE CORPORATION, | ) | |
| MERSCORP, INC. and its subsidiary | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Debtor: David Judah
Post Office Box 1082
Macon, Georgia 31202

For Defendant: Matthew R. Brooks
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308-2216

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's complaint to determine the extent and validity of a lien and Defendants' motion for summary judgment. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(K). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Undisputed Facts**

On May 12, 2006, Debtor-Plaintiff Sharon D. Bishop borrowed $115,900 from Defendant GMAC Mortgage and executed a promissory note in that amount. Also on May 12, 2006, Plaintiff gave Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") a security deed on real property serving as her primary residence for the purpose of securing the note held by GMAC.

The security deed provided that "MERS ... is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument." (Def. Mot. Summ. J'mt., Aff. of Juan Aguirre, Ex. B., Security Deed, p.1., docket no. 24.[1]) It further provided that "Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale" of the property secured by the deed. (Security Deed, p.3.) The security deed identifies GMAC as the lender, identifies the note by date and amount, and identifies the loan as the debt evidenced by the note. (Security Deed, p.2.) The security deed was recorded on May 15, 2006, in the records of the Clerk of the Superior Court of Houston County, Georgia. At some unspecified

---

[1] Hereinafter cited as "Security Deed."

later date, Plaintiff defaulted on the note payments.

On September 9, 2010, MERS executed a transfer and assignment of the security deed to GMAC. The assignment was recorded on September 20, 2010. On October 5, 2010, GMAC conducted a foreclosure sale of Debtor's residence. GMAC was the highest bidder at the foreclosure sale in the amount of of $99,093.09. On the same date as the foreclosure sale, GMAC executed a deed under power of sale to convey the property to GMAC. On November 3, 2010, Plaintiff filed a Chapter 13 petition. On January 20, 2011, GMAC recorded the deed under power of sale.

Plaintiff filed a complaint to determine the extent and validity of lien, for declaratory judgment, and for other and further relief. In the complaint, Plaintiff challenges the validity of the foreclosure sale, alleging (1) the transfer the security deed from MERS to GMAC was void because MERS had no rights in the property to transfer, and therefore Plaintiff's residence was property of the estate; and (2) the recordation of the deed under power of sale violated the automatic stay.

The three Defendants filed a motion for summary judgment. The Court held a hearing on the motion on November 21, 2011. At the hearing, the Court granted Defendants' motion. This memorandum opinion supplements the announcement made at the hearing.

**Conclusions of Law**

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, which provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Defendants provided a statement of uncontested facts with their motion for summary judgment as required by Local Rule 7056-1(a). Although Debtor filed a brief raising various legal arguments, she did not file a "separate, short, and concise statement of the material facts" she contends are in dispute. LBR 7056-1(b). Therefore, the facts offered by Defendants are deemed admitted.[2] LBR 7056-1(c). Because the material facts are undisputed, the only question is whether Defendants are entitled to judgment as a matter of law.

In her brief, Debtor contends Defendants are not entitled to summary judgment because (1) the foreclosure sale is void or voidable due to a defect in the assignment of the power of sale from MERS to GMAC; or (2) she had an equitable right to appeal the foreclosure proceeding that had not expired as of the petition date.

Validity of the Foreclosure Sale

Debtor contends that the foreclosure sale is void or voidable because of a defect in the transfer of the power of sale. First, Debtor argues that MERS's rights as a nominee are not defined in the security deed. Therefore, it is not authorized to transfer the power of sale under the security deed. Second, Debtor argues that the assignment of the power of sale from MERS to GMAC was made without consideration and was, therefore, ineffective. The Court finds both arguments unpersuasive.

The security deed defines MERS's authority and its relationship to GMAC. The relevant language includes the following:

[2] To the extent Debtor's brief purports to dispute facts offered by Defendants, that effort is untimely. A response to the movant's statement of uncontested facts must be filed "within 21 days of service" of the movant's statement. LBR 7056-1(b). In this case, Defendants' statement of facts was served on October 11, 2011, and Debtor's response was not filed until 35 days later on November 15, 2011.

> MERS ... is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument.
> ...
> Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the following described property ...
> ...
> TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS .... Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property[.]

(Security Deed, p.1, 3 (emphasis added).)

Debtor first argues that because the security deed fails to define the rights of the nominee, Defendants are estopped from enforcing a particular definition of a nominee. Debtor cites Moss v. Moss, 463 S.E.2d 9 (Ga. 1995) to support her argument. Moss involved a divorce settlement agreement that required the husband to transfer property of a certain value to the wife. Id. at 9. However, the court found the agreement was unenforceable because it did not include an essential term–the method of appraising the property to be transferred. Id. at 9-10. The security deed in this case has no similar deficiency. It states in at least four places that MERS is acting as GMAC's nominee. Furthermore, it sets forth specific rights and duties of MERS: MERS is the grantee of the security deed and has the power of sale. This is sufficient to identify MERS as GMAC's agent for a limited purpose. See O.C.G.A. § 10-6-1 (2009) ("The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for

him[.]”); Drake v. Citizens Bank of Effingham (In re Corley), 447 B.R. 375, 380 (Bankr. S.D. Ga. 2011) (“The language used in the Security Deed is sufficient to create an agency relationship [between the lender and MERS]”); contra Landmark Nat’l Bank v. Kesler, 216 P.3d 158, 166 (Kan. 2009) (describing MERS as a straw man rather than an agent of the lender). For these reasons, the Court finds the security deed does not lack any essential terms regarding MERS’s role or its rights and duties.

Debtor next argues that the assignment of the security deed from MERS to GMAC was invalid because it lacked consideration. In Bank of Cave Spring v. Gold Kist, Inc., 327 S.E.2d 800 (Ga. App. 1985), which involved a dispute over the assignment of milk proceeds, the court said, “An assignment is a contract and, in order to be valid, must possess the same requisites (parties, subject matter, mutual assent, consideration) as any other contract.” Id. at 802 (citing 4A Words and Phrases 109). In this case, the transfer and assignment recited consideration (“value received”) but there is no evidence any consideration actually exchanged hands. However, the Court is not persuaded that consideration was necessary for this transaction.

First, transfer of a security deed is significantly different from the assignment of a right to receive a stream of payments that was at issue in Bank of Cave Spring. The Court located no cases that discuss consideration in the context of the transfer of a security deed. However, such transfers are governed by statute. O.C.G.A. § 44-14-64(a) provides as follows: “All transfers of deeds to secure debt shall be in writing; shall be signed by the grantee or, if the deed has been previously transferred, by the last transferee; and shall be witnessed as required for deeds.” It

makes no mention of consideration.[3] Second, even if consideration is necessary to transfer a security deed, the transaction here was not an arm's length transfer between independent parties. Instead, it was a transaction between a principal and agent that involved a change in the rights and duties of the agent. Although the document that memorialized the transaction is titled "Transfer and Assignment," it is more akin to a revocation of MERS's authority to act as GMAC's nominee with respect to the security deed, for which no consideration is required.[4]

In this case, GMAC initiated the foreclosure sale, but earlier in its history, MERS itself often did so.[5] However, MERS ceased this practice and established a policy of transferring the security instrument to the note holder–as in this case–in an apparent response to unfavorable court decisions that prevented MERS from exercising its power of sale in certain states. Adam Leitman Bailey & Dov Treiman, Correcting the MERS Errors to Establish a Secure, Profitable

---

[3] By comparison, O.C.G.A. § 44-5-30, which governs deeds to land generally provides that such deeds "must be in writing, signed by the maker, and attested by at least two witnesses. It must be delivered to the purchaser or his representative and be made on a good or valuable consideration."

[4] "Generally, an agency is revocable at the will of the principal." O.C.G.A. § 10-6-33 (2009).

[5] "In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.
The initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage Electronic Registration Systems, Inc.' named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system." Merscorp, Inc. v. Romaine, 861 N.E.2d 81, 83 (N.Y. 2006) (footnotes omitted).

National Title System, 23 BNA's Bankruptcy Law Reporter 1307, 1309-10 (Oct. 20, 2011). In some jurisdictions, including Georgia, MERS has been more successful. The courts here have refused to invalidate or enjoin a foreclosure sale initiated by the holder of the security deed who was not also the holder of the note. Kabir v. Statebridge Co., LLC, No. 1:11-cv-2747-WSD, 2011 WL 4500050, at *5 (N.D. Ga. Sept. 27, 2011) (collecting cases); see also LaCosta v. McCalla Raymer, LLC, No. 1:1-cv-1171-RWS, at *5-6 (N.D. Ga. Jan. 18, 2011). The issue of a split note and security instrument are not present in this case because GMAC, the original note holder and the foreclosing party, is in possession of both the note and the security deed.

For the foregoing reasons the Court finds no defect in either the security deed or the transfer and assignment. At the time of the foreclosure sale, GMAC was vested with the power to sell Debtor's residence. Therefore, the foreclosure sale was neither void nor voidable.

Equitable Right of Redemption

Debtor arges that because the foreclosure sale had not yet been recorded at the date of her bankruptcy filing, she retained an equitable right of redemption that became part of her bankruptcy estate, and the post-petition recordation of the sale violated the automatic stay. Debtor is mistaken. The law in Georgia is well established that the foreclosure sale itself cuts off all the debtor's rights in real property. Williams v. Suntrust Bank (In re Williams), 393 B.R. 813, 820 (Bankr. M.D. Ga. 2008); First Nationwide Mortg. Corp. v. Davis (In re Davis), No. 97-11093, 1998 WL 34066146, at *2-3 (Bankr. S.D. Ga. Jan. 21, 1998); see also Pearson v. Fleet Fin. Ctr., Inc. (In re Pearson), 75 B.R. 254, 255 (Bankr. N.D. Ga. 1985) ("Georgia law states that the equity of redemption expires when the high bid is received at the foreclosure sale.")

The automatic stay prohibits certain actions against the debtor, property of the debtor, and

property of the estate. 11 U.S.C. § 362(a). In this case, Debtor retained no interest in her residence on the petition date, so it did not become property of the estate. Consequently, GMAC did not violate the automatic stay by recording the sale post-petition.

Equitable Right of Appeal

Debtor's final argument is that she has an equitable right to appeal the foreclosure pursuant to O.C.G.A. § 5-6-33(a)(1) that was still ripe on the petition date, and through that right of appeal, the bankruptcy estate retained an interest in the property. O.C.G.A. § 5-6-33(a)(1) provides as follows: "Either party in any civil case ... may appeal from any sentence, judgment, decision, or decree of the court[.]" Id. (emphasis added). Unfortunately for Debtor, foreclosure in Georgia does not involve any judgment, decision, or decree of a court. Thus, § 5-6-33(a)(1) does not apply to create a right to appeal. A court judgment may arise from a confirmation proceeding if the foreclosing creditor seeks to pursue a deficiency. O.C.G.A. § 44-14-161. However, no confirmation proceeding has been initiated in this case. Therefore, Debtor has no equitable right to appeal the foreclosure sale.

Conclusion

The Court finds no defect in GMAC's right to exercise the power of sale in the security deed or any other defect that would render the foreclosure sale void or voidable. Furthermore, the Court finds that Debtor retained no interest in her residence on the petition date. For these reasons, the Court concludes Defendants are entitled to judgment as a matter of law, and their motion for summary judgment will be granted.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT